# Exhibit A

**Article titled "Ethics issues arise in rulings by justice of the peace" by Lise Olsen published by the Houston Chronicle:**

http://www.chron.com/news/houston-texas/article/JP-Hilary-Green-ruled-on-cases-involving-her-3798572.php

# Ethics issues arise in rulings by justice of the peace

**City controller's wife ordered evictions despite her connections to felon**
**By Lise Olsen | August 18, 2012 | Updated: August 20, 2012 6:39am**




*Dwayne K. Jordon, described as a family "friend" of Ronald and Hilary Green, has been the recipient of favorable rulings in her justice of the peace court.*

Elected Justice of the Peace Hilary Harmon Green repeatedly ordered the eviction of tenants and relatives on behalf of a five-time felon even though she and her husband, City Controller Ron Green, both had financial and personal ties to the home builder.

In one case involving Dwayne K. Jordon - a convicted thief who has admitted to repeatedly pilfering people's properties for his residential construction projects - Green evicted Jordon's own uncle despite a dispute over whether Jordon held ownership of the family home.

That ruling, which later was overturned by a county court, came in 2009 - the same year Green's husband, a lawyer, was paid an undisclosed amount of money to advise Jordon on his criminal case, meet with a Harris County prosecutor and recommend a defense attorney.

Through her clerk, Hilary Green refused to comment on why she did not recuse herself from more than a dozen matters involving Jordon, who has been her neighbor, her home renovation contractor and for whom her husband has served as a character witness in the pending real estate criminal case.

"Judicial ethics prohibit the Judge from discussing cases filed in this court," Green's chief clerk, Sheritta Johnson, wrote in a response to questions that the Houston Chronicle e-mailed to Green. "In accordance with the rules of ethics governing Judges, the Judge cannot speak with you about these cases. All information about each case is contained in the court case file."

Three separate requests for Green's comment were denied. The Chronicle reported last week that both Green and her husband supported leniency for the contractor con man in his pending sentencing on felony real estate theft charges.

***Ruled on evictions***

In the last four years, Hilary Green has ruled in mostly routine eviction cases involving Jordon's company, E. Jordon Inc., her own records show. As an active builder, Jordon owned dozens of properties in Precinct 7 where Green is one of two justices of the peace, a review of electronic docket records shows.

In at least 10 cases, Green ordered evictions after Jordon's tenants failed to timely pay rent - or dismissed eviction cases after tenants paid or moved - for duplexes that Jordon built and claimed to own, according to a Chronicle review of documents made available by Green's staff. In one recent case, however, Green ruled against Jordon in favor of a bank that acquired one of his properties through foreclosure.

In 2007, the year Green became a justice of the peace for Precinct 7, the Greens lived in a rental house next door to Jordon because their own home, which they nearly lost to foreclosure, was uninhabitable due to unfinished renovations they could no longer afford.

Impressed by the work Jordon was doing in their neighborhood, they agreed in 2008 to pay him more than $200,000 to renovate their own house. Their contract with Jordon helped the Greens land a $508,000 mortgage, though their house had an assessed value in 2008 of only one third that amount, according to Harris County tax records.

***Ruled in family dispute***

Ethically, Hilary Green should have recused herself on legal cases involving Jordon because of her other associations with him, said Lillian Hardwick, an Austin attorney and expert in judicial conduct who co-authored the authoritative Handbook of Texas Lawyer and Judicial Ethics.

Green's most unusual ruling favored Jordon in a family dispute over the ownership of his grandfather's house in 2009.

Jordon, who has five prior felony convictions for robbery, kidnapping, firearms, drugs and theft, was raised by his maternal grandfather, Ezekel Jordon Sr., who for decades owned a brick home on Simsbrook Drive only a block from Sims Bayou in Houston, according to records and family members.

But soon after the elder Jordon died in September 2009 at age 87, Dwayne Jordon changed the locks on his grandfather's house and later claimed to be the true owner by presenting two different wills and a deed that his uncle denounced as forgeries, according to documents filed in related court cases. Dwayne Jordon, who helped manage his grandfather's money, also had taken out a loan against his grandfather's house, according to interviews and public records.

Even before the funeral, Jordon filed an eviction case in Green's court against his uncle Ezekel Jordon Jr., his grandfather's only son, who had been living in the house for about month before the elder Jordon died.

Despite disputes over the ownership of the house and the authenticity of documents, Green ruled for Dwayne Jordon and later denied his uncle permission to re-enter the house to collect his personal property, court records show.

"She illegally evicted me," Ezekel Jordon Jr. told the Chronicle. "She would not let me say anything. … I was trying to tell her that the will was fake and she would cut me off."

***Jurisdiction question***

Ezekel Jordon Jr. said Green never disclosed her relationship to his nephew in court, but he learned of it in a Chronicle article published last week. In November 2009, he won an appeal, according to an order signed by then-County Court at Law Judge Jack Cagle, now a county commissioner. Jordon lacked authority to evict his uncle because he never legally established ownership of the property and therefore Green, as a justice of the peace, should not have ruled in the eviction case at all, according to arguments made in the appeal by Jordon's attorney with nonprofit Lonestar Legal Aid.

According to the Texas Government Code, justices of the peace do not have jurisdiction in matters where more than $20,000 is at stake or in trials to resolve "title to land."

"Justices of the peace are not supposed to act in an eviction case when there's a dispute about title," said Rich Tomlinson, director of litigation at Lonestar Legal Aid.

Ezekel Jordon Jr., who was unemployed in 2009 after a recent drug possession conviction, said he was unable to afford a lawyer to fight his nephew's claim to the house by contesting the will and taking it to probate court. Instead, Dwayne Jordon quickly resold the house, records show. Lone Star Legal later provided copies of two versions of the disputed wills to the Harris County DA's office for a possible criminal investigation. "The signatures (of the deceased) on the documents do not match," Tomlinson said.

Jordon's attorney, Chip Lewis, said that Jordon's uncle agreed to give up his rights to the house after being compensated by a $2,500 settlement. Lewis said he knew nothing about the will dispute.

Jordon is scheduled to be sentenced Friday in the court of Harris County District Judge David Mendoza after pleading guilty to felony theft for his role in a real estate scam. Two 2009 indictments describe how Jordon and an accomplice pilfered 23 different properties, mostly in Sunnyside neighborhoods, used forged deeds to take land from rightful owners and then built houses that were sold to others. Each man blames the other for the thefts.

***Urging light sentence***

None of the evictions handled by Green involved homes Dwayne Jordon built on stolen properties, according to a review of court records. But seven involved properties in a separate mortgage fraud scheme that is part of a pending 2010 felony criminal charge against Jordon, according to the indictment and a civil lawsuit filed against Jordon by his bank.

Hilary and Ron Green, one of the city's highest elected officials, appeared in court on Jordon's behalf in March. Ron Green described him as a family "friend" and has urged a lenient sentence for Jordon so that he can pay back his victims. Prosecutors are seeking at least 25 years to life in prison.

lise.olsen@chron.com

# Exhibit B

**Article published by KERA News titled "Investigation Finds Texas At Risk For Corruption"**

http://keranews.org/post/investigation-finds-texas-risk-corruption

# Investigation Finds Texas At Risk For Corruption

Texas ranks in the bottom half of all states for being vulnerable to corruption. That's one of the findings in the extensive State Integrity Investigation which looks at how accountable state governments are to their citizens.

The report released Monday was compiled by the Center for Public Integrity, Global Integrity and Public Radio International.

The sad news is that Texas nearly flunks the accountability test and has plenty of company. No state gets an A. Twenty- three states receive grades of B or C.

Texas ranks twenty-seventh and receives a D+ when graded in 14 categories designed to measure vulnerability to corruption.

Kelly Shannon, a veteran capitol reporter in Austin, was the primary researcher in Texas.

Shannon: It was a very extensive project. There were 330 different indicators as they called them or questions to answer as part of the research.

Shannon spent several months tracking down the laws in place that are supposed to ensure public access to information; regulate political gifts and contributions; protect against conflicts of interest and cronyism.

Then she looked at whether those laws are really effective. It's that gap between what's intended and what really happens that causes Texas' score to sink like a stone from a B to a D.

Shannon: Several reasons that these scores come down is we have unlimited campaign contributions to candidates except for judicial races. We don't have bans or any kind of real watchdog on patronage or cronyism when it comes to appointments or rewarding with contracts. And, yeah, we have a strong public information law as they go but the way public officials and government agencies enforce it can bring it down.

Public access to information is among the five categories where Texas flunks. Some agencies and public officials are not required to release records. Officials may deny, delay or limit the release of documents forcing citizens to consider an expensive and lengthy appeal.

Texas also gets an F for executive accountability; state civil service management; a redistricting process that locks out public participation and the state insurance commission.

Alex Winslow is executive director of Texas Watch, a citizen advocacy group that monitors the insurance industry. Winslow helped review the investigation findings.

Winslow: The industry has an enormous amount of influence over what happens at the Department of Insurance. There may be rules on the books about gifts and whether staff can be wined and dined but those rules are disclosure rules not limitations on the access that the industry has to the commissioner and to senior staff.

And Winslow believes allowing the Governor to appoint the insurance commissioner exposes the agency to political pressure.

Winslow: The governor appointing the commissioner raises serious questions about what are his goals and his needs, right? The insurance commissioner should be looking out for the interests of all Texans and all policyholders, not being concerned about serving the politician objectives of any particular governor.

Texas also gets low marks for having no limits on how much individuals, lobbyists or political action committees can contribute to campaigns.

McDonald: That's been a source for what you might even call corruption in the state over the years.

Craig McDonald directs Texans for Public Justice, a non-partisan research group that tracks the money in Texas politics. McDonald also reviewed the data for accuracy.

McDonald: Texas is by far the largest and wealthiest state that moves hundreds of millions of dollars of political money through the system with no limits. It really skews who is active in Texas politics. For example, if you look at the last election cycle, 2010 in Texas, candidates raised $200 million dollars and $70 million dollars of that came from just 204 individuals. So too few people in Texas have too much political clout and when you have too much clout you have too much influence on the political system.

Texas did score relatively high in other categories. It received a near perfect score for having an independent State Auditor's Office protected from political influence.

The lowest scoring state in the survey is Georgia.

The highest scoring state might come as a surprise. It's the home of Tony Soprano and some real-life mobsters. The investigation found that past scandals in New Jersey have resulted in its passing some of the toughest anti-corruption laws in the country.

The State Integrity Investigation graded each state on more than 300 indicators of accountability, transparency, and corruption risk. The indicators are divided into 14 categories, which appear on the report card. Click on each category to see its individual indicators. Or follow the link on the report card to read an overview of what your state is doing well – and not so well – when it comes to government integrity."

State Integrity Investigation: Texas Page

http://blog.chron.com/txpotomac/2012/03/texas-gets-near-failing-grade-for-corruption-risk/

# Texas gets near-failing grade for corruption risk

Posted on March 20, 2012 | By Emily Wilkins

Looks like the Wild West is still alive in Texas.

Texas has been given a D+ in corruption risk as part of a State Integrity Investigation project, making it the 27th least corrupt state in the nation.

The project is collaboration between the Center for Public Integrity, Public Radio International, and Global Integrity.

The report card was an average of scores from 14 different areas including judicial accountability, state budget process and redistricting. About 500 questions were used in the process of determining the rankings. Texas received an A (99 percent) in internal auditing and two B- grades in state pension fund management and procurement.

The worst categories on the report card all earned an F: public access to information, executive accountability, state civil service management, state insurance commissions, state budget processes and redistricting.

None of the states scored above a B+, and that grade was given to only one state – New Jersey. Georgia received the lowest score, F, with a 49 percent.

Craig McDonald, the director of Texans for Public Justice, said he was not surprised to see Texas had come close to failing – if anything he was surprised to see a plus-sign after the D.

“We were closer to flunking the survey than we might think,” McDonald said, noting that the judicial accountability score might have been lower than the C grade Texas received if it was taken into account that Texas judges are allowed to take campaign contributions from lawyers and other special interest groups.

“If that had been a requirement, I think we would have flunked,” McDonald said. “Apparently we’re so unique it wasn’t on the table.”

But of all the scores, McDonald believes that the most detrimental grade is the D- Texas received in political financing.

“We are one of the few states that have no limits on what a lobbyist can give, what a PAC or individual can give – that really pulls down our score and results in Texas being run like it’s an oligarchy,” McDonald said. “If we reform that dramatically, we might not rank so low on other health and human service indicators.”

Governor Rick Perry’s office released a statement on the remark, noting that Texas was recently ranked first in transparency of government spending by the United States Public Interest Research Group. Perry himself has made his personal finances public for the last two decades.

“Gov. Perry believes that in order to keep government accountable, Texans need to be able to track how and where their hard-earned dollars are spent, and he is committed to keeping government spending in check,” according to a statement from Perry’s office.

Rep. Gene Green, a Houston Democrat, said there were some differences in the regulations for transparency and the ones for accountability. But he couldn’t say whether the grade was deserved or not.

“The Texas government didn’t fare as badly as others,” he said. “But I’ll let the voters in Texas judge whether they believe we deserve a D+.”

# Exhibit C

**Copy of Fax of Notice of Automatic Stay of Sale of Property sent to multiple Beal Defendant Employees and agents.**

**1704 Cornwall Lane**
**Sachse TX 75048**
**214-674-6572**
**805-830-1699 (FAX)**







| **To:** | All Beal Affiliates & Agents | **From:** | Jo Ann Breitling |
|---|---|---|---|
| **Fax:** | 847-550-7405 | **Pages:** | 3 |
| **Phone:** | 847-550-7550 | **Date:** | August 29, 2014 |
| **Re:** | STAY OF SALE | **cc:** | |

**URGENT**

## NOTICE OF AUTOMATIC STAY OF SALE OF PROPERTY

**Located at: 1704 Cornwall Lane, Sachse TX 75048**

This is to notify you that per the Texas rules of civil procedure, 735 & 736.11, you must call off the scheduled sale on Tuesday September 2, 2014.

## Texas rules of civil procedure, 735 & 736.11

**"Automatic stay and dismissal if independent suit is filed. A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing or enforcement of the loan agreement, contract, or lien sought to be foreclosed on prior to 5:00 p,m. on the MONDAY before the scheduled foreclosure sale."**

YOU HAVE NOW BEEN NOTIFIED. THE BREITLINGS FILED AN ORIGINAL PETITION ON FRIDAY, AUGUST 29, 2014, AGAINST THE FOLLWING PARTIES:

**LNV Corporation**
**Dovenmuehle Mortgage Inc.**
**MGC Mortgage Inc.**
**Codilis & Stawiarski P.C.**
**Dale B. Tillery**

**A LIS PENDENS IS ON FILE WITH THE DALLAS COUNTY RECORDER.**

Sincerely,

Jo Ann Breitling

Jo Ann Breitling



201400221862
LP 1/2

Recording Requested and Return to:
Samuel and Jo Ann Breitling
1704 Cornwall Lane
Sachse, Texas 75048

# NOTICE OF LIS PENDENS

Pursuant to Texas Property Code Ann. § 12.007 (Notice of lis pendens), the undersigned states:

1. As Plaintiffs(s), we Samuel and Jo Ann Breiting, have filed a Petition in the Dallas County Civil District Court for cause of action based on defendants violations of due process under the United States Constitution; for defendants conspiracy in a scheme and artifice to defraud with intent to fraudulently deprive us of our property; for other acts of fraud; and for Quiet Title; (Our petition has been filed electronically with the Dallas County Civil District Court but it has not yet been processed by the court and assigned a cause #; However the cause # for the prior related case is: DC-14-04053 and this case does NOT have a final Order as pending litigation has not been adjudicated.)

2. The defendants(s) are LNV Corporation, MGC Mortgage Inc., Dovenmuehle Mortgage Inc., Codilis & Stawiarski P.C. and Dale B. Tillery;

3. The object of our action stems from a fraudulent foreclosure action filed by LNV Corporation the defendants in this matter because they violated of our Constitutional rights to due process and equal protection of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and committed certain acts of fraud. The defendants conspired together in a scheme and artifice to defraud and to intentionally deprive us of our constitutionally guaranteed rights to due process with intent to harm us and deprive us of our property.

4. The description of the real property to be affected is:

**1704 Cornwall Lane, Sachse, Texas 75048**

Dated this 29th day of August, 2014

Jo Ann Breitling
214-674-6572

Samuel Breitling



**STATE OF TEXAS**
**County of Dallas**

The foregoing instrument was acknowledged before me this 29th day of August, 2014 by JoAnn Breitling by Katrina Renee Wieck

Notary Public for Texas

My commission expires: May 16, 2017

The foregoing instrument was acknowledged before me this 29th day of August, 2014 by Samuel Breitling Katrina Renee Wieck of TEXAS UPS, a corporation, on behalf of the corporation.

Katrina Renee Wieck

Notary Public for Texas

My commission expires: May 16, 2017




Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
08/29/2014 03:03:04 PM
$30.00



201400221862

# Exhibit D

**Copy of Letter sent to Defendant MGC by Texas Attorney General Greg Abbott specific to the validity of foreclosures where robosigned documents were used.**

ATTORNEY GENERAL OF TEXAS
GREG ABBOTT

October 4, 2010

MGC Mortgage, Inc.
7195 Dallas Parkway
Plano, TX 75024

**RE:** MGC Mortgage, Inc. Foreclosures in Texas

Gentlemen:

Recent troubling developments about the veracity of claims made on documents used by Ally Financial, Inc., in its foreclosure filings have led to an inquiry by our office as to the full harm Texas homeowners have suffered.

We are certain that you must be aware of the issues raised when Ally Financial, Inc., and later JP Morgan Chase and Bank of America, announced that they were suspending foreclosures on certain properties in 23 states. It appears that they had discovered, through testimony of their employees in private litigation, that the employees, referred to as "robosigners," had engaged in practices concerning the execution of affidavits which were used in foreclosure litigation, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by the signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments, charges and advances

We are aware that MGC Mortgage, Inc. services a significant number of mortgage loans in the State of Texas. It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with the issues described, above may have been used in connection with foreclosures in the State of Texas. Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing MGC Mortgage, Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been a violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been invalid.

We are also aware that after the practices described above came to light, Ally Financial, Inc., JP Morgan Chase and Bank of American voluntarily suspended all foreclosures in twenty-three states in which foreclosures are conducted solely through a judicial process, in order to determine which foreclosures may have been tainted by illegitimate affidavits. The State of Texas hereby demands that in the State of Texas, MGC Mortgage, Inc. immediately suspend all foreclosures, all sales of properties previously foreclosed upon, and all evictions of persons residing in previously foreclosed upon properties, until MGC Mortgage, Inc. has done the following:

1. Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas;

2. Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process;

3. Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law;

4. Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures;

5. Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits;

6. Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified;

7. Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation; and

8. Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities.

Please provide your response on or before October 15, 2010.

Sincerely,

Paul D. Carmona
Chief, Consumer Protection and
Public Health Division

# Exhibit E

http://texaspropertytitle.com/blog/texas-rule-736-foreclosure/

# Texas Rule 736 Foreclosure – Judicial?

Posted on May 27, 2011 by Mary Doggett

**FORECLOSURES UNDER RULE 736, TEXAS RULES OF CIVIL PROCEDURE:**
**Why an "Expedited Foreclosure Proceeding" is not a "Judicial Foreclosure"**

There is a common misconception in Texas as to what exactly is a foreclosure procedure pursuant to Rule 736 of the Texas Rules of Civil Procedure. Various types of real property liens must go through this procedure before they are foreclosed: home equity liens, transferred property tax liens, and possibly–thanks to House Bill 1228 by Dutton—property owner's association liens.

Although referred to as expedited *judicial* foreclosures[1], in reality, Rule 736 foreclosures are nonjudicial foreclosures preceded by a judicial proceeding – but not a suit. Rule 735 distinguishes the two by explaining that a party who wants to foreclose these liens can file 1) a *suit* seeking judicial foreclosure; 2) a *suit or counterclaim* seeking a final judgment including an order allowing foreclosure under a security instrument and § 51.002; or 3) an *application for an order allowing foreclosure* under Rule 736.

Here is a comparison of the most basic steps in a traditional judicial foreclosure versus a foreclosure pursuant to Rule 736:

| **Judicial Foreclosure Suit** | **Rule 736 Application for Order Allowing Foreclosure** |
|---|---|
| | Lienholder sends notices, accelerates debt |
| Lienholder files suit | Lienholder applies to court for an order allowing foreclosure |
| *Court has jurisdiction to address multiple claims and parties* | *Court only has jurisdiction to determine whether has correctly alleged and proven the debt, the default, and the notices* |
| Court issues a judgment foreclosing the lien and ordering the property sold | Court issues an order allowing a nonjudicial foreclosure under Texas Property Code 51.002 |
| *Judgment may be appealed* | *Order has no preclusive effect on subsequent proceedings* |
| Clerk of the court posts property for sale | Trustee posts property for sale |
| Officer of the court (usually sheriff or constable) conducts foreclosure sale | Trustee conducts foreclosure sale |

In a judicial foreclosure one would file a suit and get a judgment; the court would order the lien foreclosed, issue the order of sale, and have an officer of the court conduct the sale.

In a 736 foreclosure, on the other hand, the court's actions are more ministerial. Before the court proceeding, the lienholder starts the nonjudicial process by sending default notices and accelerating the debt. Only then does he file an application for an order (as opposed to a suit) in court. Additional parties and claims are not permitted: the only issue for the court to determine is whether the lienholder complied with the conditions precedent to foreclosing the lien. In fact, if the debtor raises any other issues, the court is essentially supposed to dismiss the 736 application. If the court agrees that the lienholder's application is sufficient, the court issues an order that says, "yes, you've done all the steps precedent to a nonjudicial foreclosure; you may now foreclose." It is then the lienholder (through a trustee) who conducts the sale, not an officer of the court.

As any attorney who practices in this area can confirm, even many attorneys and judges have misconceptions about Rule 736 proceedings and the court's duties related thereto. You'll see attorneys filing "answers" instead of "responses" and attempting to litigate counterclaims in the application proceedings. Understandably, some judges are reluctant to sign the orders, thinking (mistakenly) that by doing so, they are foreclosing the lien. Most judges want to have hearings, etc even when the debtor/owner doesn't respond or raise any issues. As a result, it is often more time-consuming to obtain an order in what is supposed to be an "expedited" proceeding than to obtain a default judgment in a traditional judicial foreclosure suit.

Hopefully, as the Legislature imposes the 736 requirement on more types of lien foreclosures, familiarity with the proceedings will increase, and they will be utilized as intended: to ensure that interested parties are properly notified of and given more opportunity to respond to foreclosure proceedings.

---

[1] Even the Texas Supreme Court and the Texas legislature have referred to proceedings under Rule 736 as "judicial foreclosures." The purpose of this article, therefore, is merely to suggest a distinction in the nomenclature of the types of foreclosure proceedings that require a judicial proceeding.



## About Mary Doggett

I have practiced in the area of Texas property taxation since 1993, and have represented and advised local governments, property owners, and lienholders alike with respect to their rights under Texas real estate and tax laws.

View all posts by Mary Doggett →

# Exhibit F

OCT-25-2000 13:40 AAMES HOME LOAN P.01/02

Homestead Cash Out

**Aames**

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

DSM TX0144AL104
AAM:
ADV:

## APPROVAL TERMS and CONDITIONS

☐ CORRESPONDENT

BROKER NAME: 1st Home Mtg. PHONE: (972) 671-5363 FAX: (972) 671-7227
ACCOUNT EXECUTIVE: PHONE: FAX:
ACCOUNT MANAGER: Arlene PHONE: (972) 445-7006 FAX: (972) 445-8202

**PROGRAM**
Code 331
Description 3/30
Lien Position First

**PRICING ADDS**
☐ Prepay Buyout
☐ Prepay Buyup (Lower rate for 5 yr.) TX
☐ Non-Owner/Second Home
☐ 80/20 or No Nonsense
☐ NIV ☐ Lite Doc
☐ Jumbo ☐ Mfd. Housing

**PURPOSE/OCCUPANCY**
☑ Refi
☐ Purchase
☑ Owner Occupied
☐ Non Owner Occ.
☐ Second Home

**PROPERTY TYPE**
☑ SFR
☐ Manufactured
☐ Units: 2☐ 3☐ 4☐
☐ Condo
☐ PUD
Leasehold Land: Yes ☐ No ☑

Final Grade or Sarp Score 563

Start Rate 12.375
Qual Rate 12.375
LTV 80
Margin 6.00
CLTV N/A

Approval Date 10-17-00
Rate Sheet 9-1-00
Guideline Date 9-1-00
Cash Out/Funds to Close 20,931

Expiration Date 11-17-00
Purchase Price
Appraised Value 162,000
Review Value
Loan Amount 129,600

**APPROVAL MODIFICATIONS:**

| NOO DATE | LOAN AMOUNT | LTV | STATE | START RATE | MARGIN | CREDIT GRADE | DOC TYPE | PROGRAM CODE |
|---|---|---|---|---|---|---|---|---|
| 10/19 | 129,600 | 80 | 4 | 12.375 | 6.0 | 563 | F/D | 331 |

| | | | | |
|---|---|---|---|---|
| AAMES FEES | ORIGINATION FEE (1) | YIELD SPREAD PREMIUM | UNDERWRITING FEE — | ASSUMABLE ☐ YES ☑ NO |
| | TAX SERVICE FEE POC (72) | FLOOD CERTIFICATION FEE POC (19) | OTHER (9) DOC (150) POC | PREPAYMENT PENALTY ☐ YES ☑ NO |
| BROKER FEES | POINTS 2% | PROCESSING FEE — | APPRAISAL FEE — | CREDIT REPORT FEE — |
| | OTHER — | | | ESCROW WAIVER ☐ YES ☑ NO |

**SPECIAL CONDITIONS:**
(PTD is prior to ordering loan documents. PTF is prior to funding.)

| PTD | PTF | |
|---|---|---|
| LB | ✓ | 1. Original package to match submission package. (Broker credit report max 60 days at funding.) expires 12/4 |
| LB | ✓ | 2. Original Appraisal (by Aames approved appraiser), acceptable to Aames Home Loan. Need resume |
| LB | ✓ | 3. Original Appraisal Review with all appraisal conditions approved. |
| LB | ✓ | 4. Preliminary title. No encroachments or survey exceptions allowed. Remove all exceptions except item(s) #: |
| LB | ✓ | 5. Insured Closing Protection Letter, specific to closing agent, dated within 45 days of funding. |
| LB | ✓ | 6. Wire Instructions. |
| LB | ✓ | 7. Typed loan application (1003), signed and dated; B with original signatures. Complete sections: 8, 10+9 |
| | | 8. Handwritten application (1003), signed and dated: ____ with original signatures. Complete sections: ____ |
| LB | ✓ | 9. Demands on all subject mortgages. Must be current at funding. exp. 10/27/00 |
| | | 10. Original signed federal tax returns for Borrower for 19__ and 19__, Co-Borrower for 19__ and 19__. |
| | | 11. W-2 statements for Borrower for 19__ and 19__, Co-Borrower for 19__ and 19__. |
| LB | ✓ | 12. Copy of current paycheck stub for Borrower (expires 10/26), Co-Borrower (expires ____). |
| | ✓ | 13. Verbal Verification of Employment by Aames Home Loan. |
| | | 14. Current signed original P&L statement for: ____ (expires ____). |
| | | 15. Satisfactory evidence of self employment. |
| | | 16. Copy of subordinated mortgage and note to reflect approved subordinate financing as follows: Amount $____ CLTV____% Monthly payment $____ Maturity ____. |
| | | 17. Verification of deposit in closing (____% down payment $____) or ($____ short to close). |
| | | 18. Source and 2 months seasoning of funds in Condition #17. |
| | ✓ | (19) Insurance Loss Payee: AAMES HOME LOAN, its successors and/or assignees P.O. Box 57093, Irvine, California 92619-7093 |

Insurance Coverage Covering One of the Following:
Loan Amount / Cost New / Guaranteed Replacement/Extended Replacement Coverage

| PTD | PTF | |
|---|---|---|
| | | 20. Condo Association Questionnaire or other HOA Cert. with current budget and P&L. |
| | | 21. Original signed Indemnification Letter. |
| | | 22. HUD-1 Settlement Statement from sale of ____ |
| | | 23. Broker to be approved by Aames. |
| LB | ✓ | 24. Flood Certification (Aames Home Loan to obtain). |
| | | 25. Original signed Section 32 Disclosure. (If applicable.) |
| | | 26. Power of Attorney. |
| | ✓ | 27. SEE ATTACHMENT "A" for debts and liens to be paid off through closing and/or additional conditions. |

By signing below, I / we acknowledge that the above conditions must be satisfied prior to funding the loan. Additionally, "Broker" or Broker's Representative acknowledges that all fees and terms are correct as stated above and authorizes ordering loan documents.

Samuel G. Breitling
Borrower Date

JoAnn Breitling
Borrower Date

Broker Date
Broker Name
10-19-00

OCT-19-2000 15:38

Broker forged our signatures without our knowledge or permission.

OCT-25-2000 13:40 AAMES HOME LOAN P.02/02





TOTAL P.02

Aames

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

CSM: TX014446-104
AAM:
ADV.

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

**ALL TAXES, LIENS AND JUDGMENTS OF RECORD**

| | Creditor | | Approximate Balance |
|---|---|---|---|
| sub: | 1. Wells Fargo | mtg | $ 81,298 |
| waive add to debt ratio | 2. GMAC | cons | 7088 |
| | 3. Community Cr. | " | 14,769 |
| | 4. Chase | " | 1626 |

**ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:**
(PTD is prior to ordering loan documents. PTF is prior to funding)

PTD PTF

28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.
29. Max fees and charges from all associated parties limited to 3%. title to provide an not cl. strt
30. Tax cert. for subject.
31. No cash out to borrower.
32. Survey to be satisfactory to Aames and title.
33) Title to issue T-42 endorsement + assure Aames of no A-6 loans in last 12 months.
34) Provide an executed original Aames 12 day discl
35) Evid. Prin Res. Mtg loan + old pd in full
36) Evid all lns (3 w/ AESA Fiesta + Citi) have been cancelled for re payment due to disability.
37) Evid monthly CCCS payment + acct in good standing.
38) Com. Cr. to evid acct is presently current (not incl)
39) Evid JoAnn's disability to cont. min of 3 yrs.

**STANDARD CLOSING CONDITIONS:**

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.
- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property at the closing unless previously approved by Lender.

Samuel B. Breitling
Borrower
JoAnn Breitling

Frances Christina Broussard

TOTAL P.02

Broker forged our signatures without our knowledge or our permission

MGC 0627

**Aames**

Approval Date:
Expiration Date: (handwritten)
Rae Sheet Date: 9-1-00

YSP
TX spec - 50 (special requires title too, don't have TX title w/o. OK to give special, have appraisal & loss loan.)

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

| Purchase Price: | Base rate | Base Margin | Base Points | Term | Occupancy |
|---|---|---|---|---|---|
| Refi | 12.875 | 6.00 | -0- | 360 | O/O - SFR BS |

| Loan Amount: | Appraisal | Review | LTV | Jr. Lien: | CLTV |
|---|---|---|---|---|---|
| 129,600 | 162000 | | 80 | | |

| Grade | Program | Index | Rate+Adds | Magin+Adds | Pts + Adds | Qualifying Rate: |
|---|---|---|---|---|---|---|
| | 331 | 6.76 | 12.875 | 6.00 | <1> | 12.875 |

Doc Type: Rate: Margin:
Occupancy: Rate: Margin: Points
Property Type: Rate: Margin: Points
Fee B/Out: Rate:
Prepay: Rate: Margin: PTS
Funds to Close

**Mortgage History(ies)**

| P/O | Res.Mortgage(s) or Rent | Balance | Payment | Rating(s) |
|---|---|---|---|---|
| ✓ | Wells Fargo 81298 | 81,482 | (917) | cr = curr, 0x30 8/00; mtg stmt = due for 11/00 |
| | | | | |
| ✓ | Cons debt | 23,483 | | |
| | Total | | | |

ALL MORTGAGES REFLECTED ON CREDIT BUREAU Y + stmt

Rent/Mortgage Grade

OPEN BANKRUPTCY? N/A

New Payment:

**Consumer Credit**

Current
30's
60's
90's
O/Coll/Judg
% Derog:
Grade:

Primary Bor: Qualifying Score: 563
Final Grade:
Pricing Score:

| | Income: | Score 1 | Score 2 | Score 3 | Tier Scoring |
|---|---|---|---|---|---|
| Borrower 1 Sam | | 570 | 539 | 563 | cr 12/6 |
| Borrower 2 JoAnn | | 524 | 451 | 516 | |
| Borrower 3: | | | | | |
| Borrower 4: | | | | | |

**Monthly Income:**

Indicate Gross ups (Y/N)

| | | | Residence: | |
|---|---|---|---|---|
| Borrower 1 (per emp 100% @ ...) | 4889 | | Rent | |
| Borrower 2 | 724 T | | Res. PITI+HOA | |
| | >2545 | | 2nd Hm PITI | |
| Borrower 3 | | | | |
| Borrower 4 | | | Bank Statement Avg: (from wrksht) | |
| Subject R.Inc | | | | |
| SREO | | | | |
| Total: | 5613 | | | |
| NOTE: | 7434 | | | |

Income for credit scoring purposes does NOT include R.E Income.

**Monthly Debt(s)**

| | Qualifying |
|---|---|
| Residence Mortgage | 1420.98 |
| Subject Junior Lien | |
| Second Home | |
| Subject Actual Taxes | 230.35 est |
| Subject Actual Insurance | 37.80 |
| Subject HOA | |
| Consumer | 1396 ~~2332~~ |
| SREO Losses (subject n/a) | 306 GMAC |
| Subject Rental Loss (if applicable) | 488 CCU |
| Other | 148 |
| Other | |
| Other | 4021.13 |
| Total Monthly Debt: | ~~4021.13~~ 3079.13 |
| Debt Ratio | ~~71.64~~ ~~54.86~~ 54.09 |

est title <1427>

c/o 30,831

| | |
|---|---|
| Total Payoffs: | 81298 + 23,483 |
| Aames Fees: | <94 + 150> |
| Broker Fees: | 3888 + -0- |
| | 108,669 |

Disposable Income 2534
Reduce Debt by (to Qualify) Y
Program Max Debt Ratio: 55
Program Max LTV: 80

Section 32 Aames title = 1.28
Broker = 3.00

Approved By: (signature) Date: 10-17-00

Date Printed: 11/15/99

Adverse Action? Y Reason Code: D

**Underwriter Comments:**

They closed without the Texas title. They also state this is "special"

MGC 0624

# AAMES HOME LOAN CONFIRMATION OF CLOSING

Funder: TERRI ECKLES
Ph.: (949) 794-0477 Fax: (949) 794-0584
Loan $: 129,600
Purchase Price: $ ——
Must close on: 10-20-00

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

**All conditions marked below must be completed and returned with signed loan documents. Failure to comply will invalidate this transaction.**

## Please fax the following items to the above referenced fax # *prior to closing*:

- X Complete wire instructions. - Must reference borrowers name and loan number on wire instructions.
- X Estimated HUD-I: Prior to closing, showing the required payoffs and/or disbursements. (All payoff amounts are ESTIMATES only, title/closing agent to verify actual balances.)

X All liens/judgments of record — X All taxes current

FAXED

- X Wells Fargo — $81,298
- X State Farm Ins. — $1272.50

- X Settlement /Closing Fee to Closing Agent (incl. Atty/Sub Escrow/Wire Fee) not to exceed $ACC.
- X Power of Attorney - when applicable - a) must be approved by Aames *prior to closing*; & b) must be recorded concurrently with security instrument (if not previously recorded)
- X FUNDER TO CONFIRM W/ CLOSER THAT ALL LIENS OF TITLE WILL BE PD THRU CLOSE

## Conditions to be met *at closing*:

The APPROVAL TERMS of this loan require that you receive from the BORROWER CASH in the amount of $________. NO EXCEPTIONS. COPY OF CASHIERS CHECK OR WIRE TRANSFER RECEIPT IS REQUIRED. *CLOSING AGENT IS NOT AUTHORIZED TO DISBURSE FUNDS UNLESS CASH FROM BORROWER IS VERIFIABLE.*

- X Typed 1003: Signed & dated, Broker to provide. Complete Section submit original signed
- X H/W 1003: Signed & dated, Broker to provide. Complete Section ________
- X Mortgage to be executed/notarized: (Include notary stamp/seal). Required Riders to be attached:
  X ARM ___ Condo ___ PUD ___ 1-4 Family ___ Rider A - 2 Yr. Prepay
  NA Assumption Rider ___ Defferal Rider ___ Rider B - No Prepay
  ****TX ONLY* ___ *Renewal & Extension* ___ *Vendor's Lien/Warranty Deed*
- X Arbitration Agreement and Fees & Charges Disclosure: MUST be signed at closing, no exceptions.
  *Closing Agent is NOT AUTHORIZED TO DISBURSE FUNDS unless disclosures are signed*
- X Notice of Right to Cancel: All rescission dates to be completed.
- NA Executed copy of Subordinated Mortgage & Note*:
  Amt. of $______ Mo. Pmt. $______ Maturity date of ______
  **If terms differ from above, need written approval from Aames Home Loan.*
- X Closing Agent to comply with *Specific & General Closing Instructions*. (Included in document pkg.)
- X Tax Information Certification: To be completed by closing agent.
- X Survey and/or Survey Affidavit in Lieu of Survey: *NO SURVEY EXCEPTIONS ON FINAL T.P.*
- X Final HUD-I: signed & dated
  ___ Correct as follows: ________
- X Final Title Policy: Title to issue the following ALTA endorsements:
  X ARM (6) X T-42 (4) ___PUD (5) ___Mfg. Home (7) X EPL (8.1) ___Form 9 (Fla. only)
- X *Approval Terms & Conditions w/ Attachment "A" - to be signed by all borrowers (2 pages)*
- X Confirmation not to record

## Conditions to be met by *Aames Home Loan*, prior to wiring of funds:

- X
- X

Rev 11/16/99

MGC 0647



BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

**ALL TAXES, LIENS AND JUDGMENTS OF RECORD**

| Creditor | | Approximate Balance |
|---|---|---|
| 1. Wells Fargo | mtg | $ 81,298 |
| 2. ~~GMAC~~ | cons | ~~7088~~ |
| 3. ~~Community Cr.~~ | " | ~~14,769~~ |
| 4. ~~Chase~~ Chase | " | ~~1,626~~ |

pp: waive add to debt ratio

Broker crossed out our automobile loans to improve our debt to income ratio without our knowledge or permission. We did not see any of these documents until March 2011. Scott Hayes, attorney for MGC, gave them to our attorney, Emil Lippe, case # DC-10-02189 Dallas District Court in 2010 but we did get them until we changed attorneys in 2011.

**ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:**
(PTD is prior to ordering loan documents. PTF is prior to funding)

PTD PTF

28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.
29. Max fees and charges from all associated parties limited to 3%. title to provide an est cl stmt
30. Tax cert. for subject.
31. No cash out to borrower.
32. Survey to be satisfactory to Aames and title.
33) Title to issue T-42 endorcement + assure Aames of no A-6 loans in last 12 months.
34) Provide an executed original Aames 12 day discl.
35) Evid. Prin Res. Mtg loan + old pd in full
36) Evid. ... Ins (3 w/AFSA ... + Citi...) have been cancelled for re payment due to disablity.
37) Evid monthly CCCS payment + acct in good standing.
38) Com. Cr. to evid acct is presently current (not in coll).
39) Evid JoAnn's disability to cont. min of 3 yrs.

**STANDARD CLOSING CONDITIONS:**

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.
- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property at the closing unless previously approved by Lender.

There are no signatures on this document

Borrower

Borrower

Broker

MGC 0623

Homestead Cash Out

# Aames

## APPROVAL TERMS and CONDITIONS

120 days up. (No earlier than 10/24)

☐ CORRESPONDENT

BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

| | | |
|---|---|---|
| BROKER NAME: 1st Home Mtg. | PHONE (972) 671-5363 | FAX (972) 671-7227 |
| ACCOUNT EXECUTIVE: | PHONE: | FAX: |
| ACCOUNT MANAGER: Valene | PHONE (972) 445-7006 | FAX (972) 445-8202 |

**PROGRAM**
Code 331
Description 3/30
Lien Position First

**PRICING ADDS**
☐ Prepay Buyout
☐ Prepay Buyup (Lower rate for 5 yr.) TX
☐ Non-Owner/Second Home
☐ 80/20 or No Nonsense
☐ NIV ☐ Lite Doc
☐ Jumbo ☐ Mfd. Housing
Special Must fund 10/31/00

**PURPOSE/OCCUPANCY**
☒ Refi
☐ Purchase
☒ Owner Occupied
☐ Non Owner Occ.
☐ Second Home

**PROPERTY TYPE**
☒ SFR
☐ Manufactured
☐ Units: 2☐ 3☐ 4☐
☐ Condo
☐ PUD
Leasehold Land: Yes ☐ No ☒

Final Grade or Snap Score: 563

Start Rate: ~~12.875~~ 12.375
Qual Rate: 12.875
LTV: 80
Margin: 6.00
CLTV: N/A

Approval Date: 10-17-00
Rate Sheet: 9-1-00
Guideline Date: 9-1-00
Cash Out/Funds to Close: 20,931

Expiration Date: 11-17-00
Purchase Price: Refi
Appraised Value: 162,000
Review Value: Supported
Loan Amount: 129,600

**APPROVAL MODIFICATIONS:**

| MOD DATE | LOAN AMOUNT | LTV | O.F./YSP | START RATE | MARGIN | CREDIT GRADE | DOC TYPE | PROGRAM CODE |
|---|---|---|---|---|---|---|---|---|
| 10/19 | 129,600 | 80 | 2 / 1 | 12.375 | 6.00 | 563 | F/D | 331 |

| | | | | |
|---|---|---|---|---|
| **AAMES FEES** | ORIGINATION FEE: -0- | YIELD SPREAD PREMIUM: <1> | UNDERWRITING FEE: -0- | ASSUMABILITY: ☐ YES ☒ NO |
| | TAX SERVICE FEE: POC <75> | FLOOD CERTIFICATION FEE: POC <19> | OTHER: Doc D <150> POC | PREPAYMENT PENALTY: ☐ YES (# of Mos. ) ☒ NO |
| **BROKER FEES** | POINTS: 2% | PROCESSING FEE: -0- | APPRAISAL FEE: -0- | CREDIT REPORT FEE: -0- |
| | OTHER: -0- | | | ESCROW IMPOUNDS: ☐ YES ☒ NO |

**SPECIAL CONDITIONS:**
(PTD is prior to ordering loan documents. PTF is prior to funding.)

INT'L PTD PTF

LB ✓ 1. Original package to match submission package. (Broker credit report max 60 days at funding.) expires 12/6

2. Original Appraisal (by Aames approved appraiser), acceptable to Aames Home Loan. need resume

LB ✓ 3. Original Appraisal Review with all appraisal conditions approved.

LB ✓ 4. Preliminary title. No encroachments or survey exceptions allowed. Remove all exceptions except item(s) #: 1, 2, 4 and 5 and C

LB ✓ 5. Insured Closing Protection Letter, specific to closing agent, dated within 45 days of funding.

LB ✓ 6. Wire Instructions.

LB ✓ ✓ 7. Typed loan application (1003), signed and dated; B with original signatures. Complete sections: LB 8, 10+9.

8. Handwritten application (1003), signed and dated: ____ with original signatures. Complete sections: ____.

LB ✓ 9. Demands on all subject mortgages. Must be current at funding. exp. 10/27/00

10. Original signed federal tax returns for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___.

11. W-2 statements for Borrower for 19___ and 19___, Co-Borrower for 19___ and 19___.

LB 12. Copy of current paycheck stub for Borrower (expires 10/26), Co-Borrower (expires ____).

(LAW) ✓ 13. Verbal Verification of Employment by Aames Home Loan.

14. Current signed original P&L statement for: ____ (expires ____).

15. Satisfactory evidence of self employment.

16. Copy of subordinated mortgage and note to reflect approved subordinate financing as follows: Amount $____ CLTV____% Monthly payment $____ Maturity ____.

17. Verification of deposit in closing (____% down payment $____) or ($____ short to close).

18. Source and 2 months seasoning of funds in Condition #17.

LB ✓ 19. Insurance Loss Payee: **AAMES HOME LOAN, its successors and/or assignees** P.O. Box 57093, Irvine, California 92619-7093

**Insurance Coverage Covering One of the Following:**
Loan Amount / Cost New / Guaranteed Replacement/Extended Replacement Coverage

20. Condo Association Questionnaire or other HOA Cert. with current budget and P&L.

21. Original signed Indemnification Letter.

22. HUD-1 Settlement Statement from sale of ____.

23. Broker to be approved by Aames.

LB ✓ 24. Flood Certification (Aames Home Loan to obtain).

25. Original signed Section 32 Disclosure. (If applicable.)

26. Power of Attorney.

✓ 27. SEE ATTACHMENT "A" for debts and liens to be paid off through closing and/or additional conditions.

By signing below, I / we acknowledge that the above conditions must be satisfied prior to funding the loan. Additionally, "Broker" or Broker's Representative acknowledges that all fees and terms are correct as stated above and authorizes ordering loan documents.

No signatures

Borrower ____ Date ____ Broker ____ Date ____

Borrower ____ Date ____ Broker Name ____

Oct-19-00 02:24P 1ST HOME MORTGAGE 7024517222

TOTAL P.02



BREITLING, SAMUEL
BREITLING, JOANN
1704 CORNWALL LANE
SACHSE, TX 75048

OSM: TX014446-104
AAM:
ADV:

## ATTACHMENT "A"

*Debts to be Paid Through Closing:*

**ALL TAXES, LIENS AND JUDGMENTS OF RECORD**

| | Creditor | | Approximate Balance |
|---|---|---|---|
| 1. | Wells Fargo | mtg | $ 81,298 |
| 2. | ~~GMAC~~ | cons | ~~7088~~ |
| 3. | ~~Community Cr.~~ | " | ~~14,769~~ |
| 4. | ~~Chase~~ | " | ~~1626~~ |

waive add to debt ratio

**ADDITIONAL UNDERWRITING PRIOR TO DOC CONDITIONS:**
(PTD is prior to ordering loan documents. PTF is prior to funding)

PTD PTF

28. All terms and conditions relating to Homestead Refi to be fully reviewed and accepted by Aames prior to funding.
29. Max fees and charges from all associated parties limited to 3%. title to provide an est cl stmt
30. Tax cert. for subject.
31. No cash out to borrower.
32. Survey to be satisfactory to Aames and title.
33) Title to issue T-42 endorsement + assure Aames of no A-6 loans in last 12 months.
34) Provide an executed original Aames 12 day discl
35) Evid Prin Res. Mtg loan + old # pd in full
36) Evid std. lns (3 w/AFSA & Fiesta + Citibk) have been cancelled for repayment due to disability.
37) Evid monthly CCCS payment + acct in good standing.
38) Com. Cr. to evid acct is presently current (not in coll)
39) Evid JoAnn's disability to cont. min of 3 yrs.

STANDARD CLOSING CONDITIONS:

- Lender's lien to be insured.
- Certified copy of signed closing instructions to reflect all final terms of transactions.
- Borrowers must execute all loan documents and other documents required by Lender.
- No Statement in the loan application or other documents submitted by borrower or broker is untrue.
- Verifications of employment, down payment, and deposit are acceptable to Lender in its sole discretion.
- If the property is located in a flood hazard area, flood insurance must be obtained in an amount equal to the lesser of the amount of the loan or the maximum amount available in the community in which the property is located.
- The terms of this loan approval are subject to change at any time, in whole or in part, based on information, circumstances or events which Lender determines could adversely affect the value or marketability of the secured property or borrower's ability to repay the loan.
- No other financing permitted. There shall be no other financing affecting the security property at the closing unless previously approved by Lender.

Only the Broker's signature

MGC 0630

Borrower

[signature]

P.02

OCT-19-2000 15:39 7024517222 97%

# TEXAS DOCUMENT ORDER FORM

APPLICATION # TX014446.104 BROKER APPROVAL # TX03736 STATUS Approved
BROKER DOCS: Yes ☐ No ☒ 80/20 1ST: Yes ☐ No ☒ (If "yes" attach page 3 of Doc Ord.)
(*If Broker Docs*, broker to be approved in state where subject is located prior to ordering docs ___ )
BROKER NAME: 1st Home Mtg. 1ST PAYMENT: 12-1-00
PROGRAM CODE: 331 PROGRAM DESCRIPTION: 3/30
PURPOSE: PURCHASE ☐ REFINANCE ☒
OCCUPANCY: OWNER OCCUPIED ☒ NON-OWNER OCCUPIED ☐ 2ND HOME ☐
CLOSING DATE: 10-20-00
***FULL REDRAW*** (affect loan terms on Note or Deed/Mtg., borrower names, property address): ***YES*** ____ ***NO*** X
NO SAME DAY FULL REDRAWS / ***PARTIAL REDRAW*** (affect TIL, GFE, RTC but not Section 32): ____
Redraws: Pls. complete new Document Order Form containing Application #, "Borrower" Information below, Changes made & need legal description. Acct. Mgr. to forward Modified Approval Terms & Conditions to Closer. Funder to hand file to Doc Dept.

## *BORROWERS...*

BORROWERS: Include all persons (whether Titled or Non-Titled) responsible for repayment of loan AND/OR whose income was used to qualify.
BORROWER #1: Samuel H. Breitling SSN: [redacted]
BORROWER #2: Jo Ann Breitling SSN: [redacted]
BORROWER #3: ____ SSN: ____
BORROWER #4: ____ SSN: ____
BORROWER #5: ____ SSN: ____
BORROWER #6: ____ SSN: ____
MARRIED ☒ UNMARRIED ☐
COMPLETE VESTING (Include any and only those persons who are to be vested on title WHETHER OR NOT they are considered as borrowers. DO NOT include not titled spouses in this section.) (If Non-Borrower, must sign Security Instrument, Riders, TIL, RTC, and SECTION 32): ____

NON-TITLED SPOUSE: ____
(Include spouses who are not to be vested but by STATE REQUIREMENT must sign Security Instruments, Riders, TIL, RTC and SECTION 32 DISCLOSURE).
MAILING ADDRESS (for non-owner or second home): ____
CITY: ____ STATE: ____ ZIP: ____

## *ESCROW/CLOSING AGENT...*

COMPANY: Fidelity Title CONTACT NAME: Andy
ADDRESS: 333 West Campbell Rd PHONE NO.: (972) 889-2022
Ste. 130 Richardson, TX. 75080 FAX NO.: (972) 889-2027
TITLE COMMITMENT DATE: 10-4-00 PARCEL #: 480099000600050000
TAX MESSAGE: "DUE ALL PAID" SPECIAL ENDORSEMENTS: ALTA 4 ☐, ALTA 5 ☐,
111.5/ARM/ALTA 6 ☐, 116.6/ALTA 7 ☐, ALTA 9 W/O EXCEPTIONS ☐, NEED: 100, 116, 8.1
APPROVED ITEMS: ____

SEND DOCS TO: __ BRANCH __ DIGITAL __ FEDEX ✓ CLOSING AGENT __ DIGITAL __ FEDEX

## *PROPERTY...*

PROPERTY ADDRESS: 1704 Cornwall Lane
CITY: Sachse STATE: TX ZIP: 75048
COUNTY: Dallas
PROPERTY TYPE: ☒ SFR ☐ MANUFACTURED HOME ☐ UNITS: 2 ☐ 3 ☐ 4 ☐
☐ CONDO ☐ PUD
CONDO/PUD PROJECT NAME: ____ FLOOD ZONE FROM FLOOD CERT: C

## *TERMS...*

REVIEW VALUE: $ supported PURCHASE VALUE: $ refi
2ND MORTGAGE: $ — LOAN AMOUNT: $ 129,600
LENDER: — TRUSTEE: —
INTEREST RATE: 12.375 MARGIN: 6.00 LTV: 80
PREPAYMENT PENALTY: YES ☐ NO ☒ PREPAY # MOS.: ____
ASSUMABILITY: YES ☐ NO ☒
SECTION 32: YES ☐ NO ☒ SEC. 32 DISCLOSURE ATTACHED: ____
QUALIFYING DEBT RATIO: 54.04 % (PREPAYMENT BOUGHT OUT IF IN 32 & OVER 50%)
CREDIT GRADE: 563 DOCUMENTATION TYPE: F D ☒ STATED/NIV ☐ LD ☐
CREDIT SCORE: BORROWER: 563 CO-BORROWER: ____

Appraiser Name: Ben M. Davis, Jr. Status: faxed resume etc.
do app

MGC 0631




Aames Home Loan, Corporate Office
3347 Michelson Drive, Suite 300
Irvine, CA 92612
(949) 794-0100 ☐ FAX (949) 794-0230

# PRE-FUNDING CHECK

## IDENTIFICATION INFO . . .

| | | | |
|---|---|---|---|
| Loan #: | TX014446 | Est Funding: | / / |
| Investor #: | 9825282 | Actual Funding: | / / |
| Investor Code: | AAMES | Office: | TX01 |
| Broker Id: | TX03736 | Agent Code: | 104 |

## BORROWER INFO . . .

| | | | |
|---|---|---|---|
| Borrower: | BREITLING, SAMUEL G. | Address: | 1704 CORNWALL LANE |
| Borrower #2: | BREITLING, JO ANN | | SACHSE, TX 75048 |

## LOAN INFO . . .

| | | | | | |
|---|---|---|---|---|---|
| Loan Type: | CONV | LTV: | 80.000% | Debt Ratio: | N/A / 54.09 |
| Loan Term: | 360 | CLTV: | | Orig Appr Val: | $162,000.00 |
| Lien Position: | 1ST | Loan Purpose: | REFINANCE | Rev Appr Val: | $162,000.00 |
| Credit Grade: | | Cash Out?: | YES | Purchase Price: | |
| Credit Upgrade?: | NO | Section 32?: | NO | Broker Doc?: | NO |
| Occupancy: | YES | Mort Bank Div?: | NO | Assumability: | MAY NOT |
| Document Type: | FULL | County: | DALLAS | Leasehold Prop?: | NO |
| Flood Deter#: | 00105482985 | Program: | 331 | Approval Date: | 10/17/2000 |
| Property Type: | SFR | Condo/Pud: | | | |

## NOTE INFO . . .

| | | | | | |
|---|---|---|---|---|---|
| Adj Type: | ARM | Max Rate: | 18.375% | Grace Period: | 10 Days |
| Start Rate: | 12.375% | Min Rate: | 12.375% | Late Payment %: | 10.0% |
| Gross Margin: | 6.000% | Note Date: | 10/20/2000 | First Payment: | 12/01/2000 |
| Initial Rate Cap: | 3.000% | Loan Amount: | $129,600 | PrePay # Mos: | |
| Subsequent Cap: | 1.000% | P&I: | 1,370.61 | Total Impounds: | |
| Rate Adj: | 36 | Prepay Penalty: | NO | Total Payment: | 1,370.61 |
| Lifetime Cap: | 6.000% | Last Pmt Date: | 11/01/2030 | | |

## LOAN CHECKER RESULTS . . .

Missing Credit Grade.
WARNING -It's a Refi, Owner occupied loan, the Sec32 calculation test is required.
Estimate Funding Date can't be blank.
WARNING -NoteDate must be 12days more than DisclosureDate
Funding Date can't be blank.
Owner occupied Texas loan, the CASHOUT flag should be N.
WARNING -Flood Determination Number should be 10 (Pinnacle) or 11 (Flood Zones) characters
REMINDER: Please make sure that the Monthly Payment Amt matches the mo. pmt on the note.
Borrower/Coborrower FICO cannot be blank
WARNING-Loan amt is morethan 50k but Variance doesnt equal 5%
REMINDER: Verify Program Code and Caps to match Note Caps
WARNING-Verify Program Code

We believe now that the broker may have "fudged" information on the documents to "fix" these problems.

Auditor Signature

Funding Manager Signature

MGC 0636

*CHECKER RESULTS . . .*

NING-Debt Ratio Cannot be greater than 50

c Pmt Adj Date should be 6, 24, or 36 mo. greater than 1st Pmt Date

Auditor Signature

Funding Manager Signature

OCT-19-2000 19:03 AMES HOME LOAN 9725543782 P.21/21

Loan #:TX014446
Customer: SAMUEL G. BREITLING

Date: October 19, 2000

**Section 1**

**1) Calculate The Prepaid Finance Charges:**

| Fees To One Stop | | Fees To Broker | | Other Fees | |
|---|---|---|---|---|---|
| Points: % | | Points: 3.00 % | 3,888.00 | All Fees paid to Broker-Owned Escrow CO.: | |
| Underwriting: | | | | | |
| Appraisal Review: | | Processing: | | Escrow /Settlement / Attorney Fee: | |
| Funding: | | Application: | | | |
| Flood Certificate: | | Administration: | | Sub-Escrow Fee: | |
| Tax Service: | | Courier: | | Title Company / Wire Transfer Fee: | |
| Prepaid Interest: | 311.85 | Other: | | | |
| Other: | | | | | |

***Total Prepaid Finance Charges:*** 4,199.85

**2) Subtract Prepaid Finance Charges From Loan Amount-This Is Your Amount Financed** (As Shown on Federal TIL Disc):

| Loan Amount | | Prepaid Finance Charges | | Amount Financed |
|---|---|---|---|---|
| 129,600.00 | - | 4,199.85 | = | 125,400.15 |

**3) Calculate the '4 (C) 7 Charges' (Fees paid by the borrower to the lender and/or broker that are not included in the prepaid finance charges, excluding reasonable 3rd party charges):**

Appraisal Fee: ______ Notary: ______

Credit Report Fee: ______ Appraisal or Pest/Inspection Fee: ______

Survey: ______

***Total "4 (C) 7 Charges":*** ______

**4) Calculate The Total Points And Fees:**

| Prepaid Finance Charges | | Prepaid Interest | | "4 (C) 7 Charges" | | Total Points and Fees |
|---|---|---|---|---|---|---|
| 4,199.85 | - | 311.85 | + | | = | 3,888.00 |

**5) Divide Total Points And Fees By Amount Financed And Multiply By 100:**

| Total Points And Fees | | Amount Financed | | | | Final Percentage |
|---|---|---|---|---|---|---|
| 3,888.00 | ÷ | 125,400.15 | X | 100 | = | 3.1005 |

**6) Is The Percentage Above In Line 5 Greater Than 7.89%?** NO

**Section 2**

| | |
|---|---|
| **1) Date Loan Application Received By One Stop:** | 10/17/00 |
| **2) Treasury Indexes For The 15th Day Of the Month Prior To Date Of Application In (LINE 1) Above: (Use Lower of 10/20 year if 15 year term, use 30 year for 30 year term):** | 5.90 |
| **3) Section-32 Trigger Rate: (LINE 2) + (10%):** | 15.90 |
| **4) Annual Percentage Rate As Listed On The Federal Truth In Lending Disclosure:** | 13.17 |
| **5) Is The A.P.R. (LINE 4) Greater Than The Section-32 Trigger Rate In (LINE 3):** | NO |

***Section-32 Determination:***

Sec32 = NO

This Loan passed the 8% and the 10% test.

Therefore, it is NOT a Section-32 high cost mortgage.

No Signatures

***Prepared And Reviewed By:*** ______ ***Date:*** ______

***Reviewed Prior To Funding By:*** ______ ***Date:*** ______

TOTAL P.21

MGC 0638

*1st Home Mortgage*
*1710 Promenade Center Richardson, TX 75080*
*Phone- (972)671-5363 Fax- (972)6717227*

OCTOBER 18, 2000

I have talked with the client and she said that she got out of CCCS in May 2000, as they were hurting her credit by not paying on time. Also we qualified her including her student loans. And I have circled on the Benefit Statement that her benefits are thru 2007.

Thank You,

Frances Christensen

Frances Christensen
Processor

37

#37
ok VB
10/18/00

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

1st HOME MORTGAGE
1710 PROMENADE CENTER
RICHARDSON, TX 75080

Borrowers:
JoAnn Breitling
Samuel Breitling

Property Address:
1704 Cornwall
Sache, TX 75048

Date: 10/01/2000

☐ Preliminary ☐ Final
(e) means Estimate

Loan NO.:
Type of Loan: Conventional, 3 Yr Arm
Rate / Term: 12.800% / 360 months

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you assuming the annual percentage rate does not change. | This amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
| 10.949% | $272,613.87 | $125,481.60 | $398,095.47 |

PAYMENT SCHEDULE:

| Number of Payment | Amount of Payments P & I | Mortgage Insurance | Payments are Due Beginning | Number of Payment | Amount of Payments P & I | Mortgage Insurance | Payments are Due Beginning |
|---|---|---|---|---|---|---|---|
| 1-36 | $1,413.40 | $0.00 | | | | | |
| 37-72 | $1,216.53 | $0.00 | | | | | |
| 73-359 | $1,053.55 | $0.00 | | | | | |
| -360 | $1,049.14 | $0.00 | | | | | |

DEMAND FEATURE: ☐ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☐ This Loan has a Variable Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 1704 Cornwall, Sache, TX 75048
☐ Collateral securing other loans with us may also secure this loan.
☐ Your deposit accounts and other rights you may have to the payment of money from us.

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $

PROPERTY INSURANCE: ☐ Property hazard insurance in the amount of with a loss payable clause is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☐ is not available through the lender at an estimated cost of $0.00 for a year term.

LATE CHARGES: If your payment is more than days late, you will be charged a late charge of % of the over due payment.

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

PREPAYMENT: If you pay off your loan early, you
☐ may ☐ will not have to pay a penalty.
☐ may ☐ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

No Signatures

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

BORROWER / DATE BORROWER / DATE

BORROWER / DATE BORROWER / DATE

Data ID: 862

# TRUTH-IN LENDING DISCLOSURE STATEMENT

## AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

Final disclosure based on closing terms.

Date: 10/20/00
Loan No: 9825282
Borrower: SAMUEL G. BREITLING AND JO ANN BREITLING
Property: 1704 CORNWALL LANE, SACHSE, TEXAS 75048

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | |
| 13.045% | $379,851.93 | $125,400.15 | $505,252.08 | |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | Payments are Due Monthly, Beginning |
|---|---|---|
| 36 | 1,370.61 | 12/01/00 |
| 324 | 1,407.13 | 12/01/03 |

DEMAND FEATURE: This obligation does not have a demand feature.

VARIABLE RATE FEATURE: Your loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the above referenced property.

ASSUMPTION: Someone buying this property cannot assume the remaining balance due under the original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to Lender.

FILING FEES: $34.00

LATE CHARGES: If your payment is more than 10 days late, you will be charged a late charge of 10.00% of the payment.

PREPAYMENT: If you pay off your loan early, you will not have to pay a penalty and you will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding nonpayment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

The payment amounts listed in the payment schedule include amounts for principal, interest, and any mortgage insurance, but do not include monthly escrow deposits for hazard and/or flood insurance, taxes or assessments.

I acknowledge receipt of the fully completed Truth in Lending Disclosure Statement.

Date: October 20, 2000

Samuel D. Breitling by Jo Ann Breitling ..........(Seal)
SAMUEL G. BREITLING by JO ANN BREITLING, Attorney-in-Fact —Borrower

Jo Ann Breitling ..........(Seal)
JO ANN BREITLING —Borrower

Why are our signatures completely separated from the contract and/or the documents we are supposedly acknowledging with our signatures? None of the Truth in Lending Disclosure Statement pages contain our signatures, and we never received them, so we were never given proper legal disclosure under the Truth in Lending Act. A judicial determination was already made as to this fact by Judge Tanya Parker in the 116th District Court, case # DC-11-07087.

App. No.

Loan No.

Lender: AAMES FUNDING CORP, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

Applicant(s): Samuel + Joann Breitling

Date: 10.1.00

Property Address: 1704 Cornwall Lane
Sachse, TX. 75048

# "NOTICE CONCERNING EXTENSIONS OF CREDIT

DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:"

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSURE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;'

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY AGRICULTURAL HOMESTEAD PROPERTY, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6) ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

OK VB 10/19/00

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOUR SUBMIT A WRITTEN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE

#34

TOTAL P.03

App. No.

Loan No.

Aames Home Loans was a "straw lender" in this transaction, raising questions about whether it meets criteria to be considered a "lawfully authorized lender".

BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT THAT IS NOT SECURED BY YOUR HOME OR TO ANOTHER DEBT TO THE SAME LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF ALL DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS."[1]

By signing below, you acknowledge that you have received a copy of this NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(A)(6), ARTICLE XVI, TEXAS CONSTITUTION.

Samuel H. Breitling 10-1-00 Jo Ann Breitling 10-1-00

| Applicant | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

MGC 0609



[1] Section 50(a)(6) provides that the owner or owner's spouse cannot be required ...

2.

**Aames**

## FEE CALCULATION FOR TEXAS OWNER-OCCUPIED, CASH-OUT REFI'S

Loan #: ____________ $ 129,600 (loan amount) x 3% = $ 3888 (a)

Aames + title Broker

BROKER FEE 3888

APPRAISAL FEE

RT

FEE

0 • NG FEE (Broker Only)

150•0000 + ROP FEE

60•0000 + atterson fee) 150 ~~125.00~~

1,217•0000 ION FEE

150•0000 +

75•0000 + EE 60.00

19•0000 +

006

1,671•0000 * FEE 150.00

NCE FEE (see chart) ~~1217~~

1,671•0000 ÷

129,600• = FEE 75 ~~64.00~~

0•0128 * FICATE 19 ~~35.00~~

129,600• ×

3• %

3,888•0000 * R FEES

1671 (b) 3888

0•C

1.29% 3 %

ER THAN (a) REFER BACK TO BRANCH

f:\forms\fund e .xls rev. 8-3-99

MGC 0610

# Exhibit G

AL 20080173032
3 PGS

---

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
**BC: 609641**

**Assignor:** **Ellington Mortgage Partner, L.P.**
**53 Forest Avenue, Suite 301, Greenwich, CT 00687**

**Assignee:** **LNV Corporation**
**7195 Dallas Parkway, Plano, Texas 75024**

**Property Address : 1704 Cornwall Lane, Sachse, Texas 75048**

**Subsequent Recording:**

**See page 2 for Mortgage recording information**

**Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on September 6, 2001, Instrument No 1520052, here in.**

**Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in.**

**Assigned to Deutsche Bank National Trustee Company f/k/a Bankers Trust Company of California, 1761 E. St. Andrews Place, Santa Ana, CA 92705 on________________, Book ________ Page _________, Instrument No__________________, here in.**